KAMINSKI, APPELLEE, *v*. METAL & WIRE PRODUCTS COMPANY,

APPELLANT, ET AL.

[Cite as *Kaminski v. Metal & Wire Prods. Co.*,

125 Ohio St.3d 250, 2010-Ohio-1027.]

*Torts — Employer intentional torts — R.C. 2745.01 — R.C. 2745.01 does not violate Section 34 or 35, Article II, Ohio Constitution.*

(No. 2008-0857 — Submitted February 18, 2009 — Decided March 23, 2010.)

APPEAL from the Court of Appeals for Columbiana County,

No. 07-CO-15, 175 Ohio App.3d 227, 2008-Ohio-1521.

_____

SYLLABUS OF THE COURT

R.C. 2745.01 does not violate Section 34 or 35, Article II of the Ohio Constitution. (*Johnson v. BP Chems., Inc.* (1999), 85 Ohio St.3d 298, 707 N.E.2d 1107, limited.)

_____

CUPP, J.

{¶ 1} This appeal and a companion case, *Stetter v. R.J. Corman Derailment Servs., L.L.C.*, 125 Ohio St.3d 280, 2010-Ohio-1029, ___ N.E.2d ___, challenge the constitutionality of R.C. 2745.01, an employer intentional-tort statute enacted by Am.H.B. No. 498, effective April 7, 2005. 150 Ohio Laws, Part IV, 5533. For the reasons that follow, we hold that R.C. 2745.01 violates neither the plain language nor the plain meaning of Sections 34 or 35, Article II of the Ohio Constitution. We find the construction of Sections 34 and 35 set forth in *Johnson v. BP Chems., Inc.* (1999), 85 Ohio St.3d 298, 707 N.E.2d 1107, to be inconsistent with other decisions of this court, including decisions subsequent to *Johnson*. Moreover, the provisions of the statute we review herein are

significantly different from those of the statute reviewed in *Johnson*. Therefore, while we do not specifically overrule the decision in that case, we limit its reach to apply only to the statutory provisions that were then at issue. Because the judgment of the court of appeals in the case sub judice was based on *Johnson*'s flawed interpretations of Sections 34 and 35, we must reverse.

{¶ 2} In *Stetter*, 125 Ohio St.3d 280, 2010-Ohio-1029, ___ N.E.2d ____, also decided this day, we uphold the constitutionality of R.C. 2745.01 in the face of challenges on other grounds. The net result of these two decisions is to confirm the constitutional validity of R.C. 2745.01. We therefore apply the statute to this case and consider the record in light of the statutory standards for an employer intentional tort. We agree with the trial court that summary judgment in favor of the employer is warranted as a matter of law pursuant to R.C. 2745.01. Accordingly, we reinstate the trial court's grant of summary judgment.

## I. Facts and Procedural History

{¶ 3} On June 30, 2005, plaintiff-appellee, Rose Kaminski, was working as a press operator at the Salem, Ohio metal fabrication manufacturing facility of defendant-appellant, Metal & Wire Products Company ("Metal & Wire"). The automatic press that Kaminski operated used a coil of rolled steel fed into the press to produce stamped, flat pieces. In operating the press, Kaminski's job was to ensure that the coil feed ran smoothly, shut the press down if it jammed, and verify that the stamped pieces met required specifications. When the coil of steel was used up, she would summon a supervisor, who would load a new coil into place with a forklift.

{¶ 4} When Kaminski's press ran out of steel on June 30, she searched for her shift's supervisor to load another coil, but she was unable to find him. Kaminski enlisted a co-worker who had loaded coils in the past to load the new coil. The co-worker used the right fork of a forklift to lift a coil, which was about five feet tall and weighed about 800 pounds.

2

**{¶ 5}** To properly load the coil onto Kaminski's press, the coil had to be switched from the right fork to the left fork. To accomplish the switch, the co-worker had to lower the coil to the floor, back the forklift away from it, and then pull forward again with the left fork positioned to pick up the coil.

**{¶ 6}** When the coil is off the fork, it can become unsteady. The co-worker was at first reluctant to have Kaminski, a small woman who was about the same height as the coil, steady the coil in an upright position while he backed away from it and repositioned. However, the two eventually agreed that Kaminski would hold the coil because the supervisor was not there and because the co-worker believed that Kaminski wanted to do it.

**{¶ 7}** With Kaminski steadying the coil, the co-worker backed the forklift away and then pulled forward. Rather than going cleanly into the coil's opening, the fork bumped the coil. Kaminski was unable to control the coil. It wobbled and then fell onto Kaminski's legs and feet, injuring her.

**{¶ 8}** Kaminski applied for and received workers' compensation benefits for her injuries. She was unable to return to work at Metal & Wire as a press operator due to the injuries. After receiving paychecks until March 2006, she was eventually discharged from employment because no other position was available. There is nothing in the record to indicate that Kaminski's workers' compensation benefits were ever terminated.

**{¶ 9}** About two months after the incident, on August 29, 2005, Kaminski filed a lawsuit in which she alleged that Metal & Wire had committed an employer intentional tort under R.C. 2745.01. Additionally, Kaminski specifically asserted that R.C. 2745.01 "in its entirety is unconstitutional" under this court's precedent, and she alleged that Metal & Wire had committed a common-law employer intentional tort. Metal & Wire answered and asserted a counterclaim for a declaratory judgment that R.C. 2745.01 is constitutional.

**{¶ 10}** Metal & Wire moved for summary judgment on its counterclaim. The trial court granted the motion, declaring the statute constitutional and holding that it therefore applied to Kaminski's claim. Metal & Wire then moved for summary judgment on Kaminski's complaint. The trial court granted that motion, determining that Kaminski had failed to raise a genuine issue of material fact that Metal & Wire's conduct fell within the statutory criteria necessary to commit an employer intentional tort.

**{¶ 11}** On appeal, the Seventh District Court of Appeals agreed with Kaminski's first assignment of error and held that R.C. 2745.01 is unconstitutional in its entirety. It based its decision upon decisions of this court interpreting prior employer intentional-tort statutes. 175 Ohio App.3d 227, 2008-Ohio-1521, 886 N.E.2d 262, ¶ 34. The court of appeals declined to consider Kaminski's further arguments that the statute is unconstitutional on new grounds never before addressed, reasoning that "[b]ecause R.C. 2745.01 is unconstitutional based on Sections 34 and 35, Article II of the Ohio Constitution" pursuant to those decisions, "further analysis here is unnecessary." Id. at ¶ 38.

**{¶ 12}** The trial court had considered Kaminski's claims only under the employer intentional-tort statute. However, the court of appeals proceeded to consider at length whether her claims met the criteria for a common-law employer intentional tort. It held that Kaminski had presented sufficient evidence under the common-law test to survive summary judgment, and it remanded the cause to the trial court for further proceedings. Id. at ¶ 46-85.

**{¶ 13}** We accepted Metal & Wire's discretionary appeal for review of three propositions of law.[1] 119 Ohio St.3d 1407, 2008-Ohio-3880, 891 N.E.2d 768. The first proposition urges us to overrule the precedent relied upon by the court of appeals in holding R.C. 2745.01 unconstitutional. The second

---

1. Some of the issues of this case and of *Stetter* overlap. In resolving the issues that overlap, we have considered all of the briefs that have been filed in both cases.

proposition asserts that R.C. 2745.01 does not violate Sections 34 and 35, Article II of the Ohio Constitution. The third proposition asserts that the court of appeals should have remanded the cause to the trial court upon its holding that the statute is unconstitutional, rather than itself considering whether the facts constituted a common-law employer intentional tort.

## II. History and Development of Employer Intentional-Tort Law in Ohio

{¶ 14} Any analysis of the development of Ohio's case law regarding employer intentional torts necessarily centers on Section 35, Article II of the Ohio Constitution. That section provides:

{¶ 15} "For the purpose of providing compensation to workmen and their dependents, for death, injuries or occupational disease, occasioned in the course of such workmen's employment, laws may be passed establishing a state fund to be created by compulsory contribution thereto by employers, and administered by the state, determining the terms and conditions upon which payment shall be made therefrom. Such compensation shall be in lieu of all other rights to compensation, or damages, for such death, injuries, or occupational disease, and any employer who pays the premium or compensation provided by law, passed in accordance herewith, shall not be liable to respond in damages at common law or by statute for such death, injuries or occupational disease."

{¶ 16} Ohio employees injured in the workplace before Section 35, Article II was adopted were forced to bring a common-law action against their employer and to prove that the employer was at fault. The employer had a number of powerful common-law defenses that left many deserving employees uncompensated. In 1911, in response to calls for reform, the General Assembly, acting without the benefit of a specific constitutional provision, enacted a statute governing compensation for industrial injuries. 102 Ohio Laws 524 et seq. The following year, the initial version of Section 35, Article II of the Ohio

Constitution was adopted. See *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 109-110, 522 N.E.2d 489.

{¶ 17} In its initial form, Section 35 empowered the General Assembly to provide for the compensation of workplace injuries or occupational diseases and authorized that body to enact legislation requiring compulsory employer contributions into a statewide fund. Section 35 and its derivative legislation "were public policy trade-offs" by which the employee achieved "a certain and speedy recovery in exchange for granting a more limited liability to the employer." Id. at 110, 522 N.E.2d 489. As originally enacted, Section 35 did not speak to the question of whether an employee who collected from the state fund could also sue the employer in tort for the same injury.

{¶ 18} The 1911 legislation contained a "wilful act" exception that allowed an employee to bring a common-law action against his employer in certain situations. The term "wilful act" however, was not originally statutorily defined, leading to "considerable legal activity against employers." Id., 36 Ohio St.3d at 110, 522 N.E.2d 489. In 1914, the General Assembly enacted G.C. 1465-76 to define "wilful act" as an act done "knowingly and purposely with the direct object of injuring another." 104 Ohio Laws 194. This court later held that under G.C. 1465-76, " 'willful act' * * * imports an act of will and design and of conscious intention to inflict injury upon some person. Gross negligence or wantonness can no longer be a willful act under this section * * *." *Gildersleeve v. Newton Steel Co.* (1924), 109 Ohio St. 341, 142 N.E. 678, paragraph one of the syllabus.

{¶ 19} Effective January 1, 1924, Section 35, Article II was amended to make the workers' compensation laws the exclusive remedy. The amendment added the second sentence to Section 35, which continues in force today and provides that "[s]uch compensation shall be in lieu of all other rights to compensation" and that employers who comply with workers' compensation laws

"shall not be liable to respond in damages at common law or by statute." On its face, this provision was widely believed to grant immunity to complying employers "from *any* common-law actions for injuries suffered by employees in the workplace." (Emphasis sic.) *Van Fossen*, 36 Ohio St.3d at 111, 522 N.E.2d 489.

{¶ 20} Fifteen years later, this court decided *Triff v. Natl. Bronze & Aluminum Foundry Co.* (1939), 135 Ohio St. 191, 14 O.O. 48, 20 N.E.2d 232, which held at paragraph two of the syllabus that an employee could file suit, despite Section 35, for an injury that resulted from a noncompensable occupational disease. The General Assembly "immediately amended the workers' compensation laws to restore the exclusivity of remedy." *Van Fossen*, 36 Ohio St.3d at 111, 522 N.E.2d 489. To that end, the General Assembly modified G.C. 1465-70, see 118 Ohio Laws 422, 426-427, to provide that employers who comply with workers' compensation statutory requirements "shall not be liable to respond to damages at common law or by statute, for any injury, disease, or bodily condition, whether such * * * is compensable under this act or not."[2] G.C. 1465-70 was later recodified as R.C. 4123.74. Id.

---

2. {¶ a} In *Van Fossen*, 36 Ohio St.3d at 111, 522 N.E.2d 489, fn. 15, this court quoted the General Assembly's concluding "declaration" on this amendment to G.C. 1465-70:

{¶ b} " 'Emergency.

{¶ c} " 'Section 3. This act is hereby declared to be an emergency measure necessary for the immediate preservation of the public peace, health and safety. The reason for such necessity lies in the fact that the law of this state relating to the rights and remedies of employers and employes has recently been so construed by the supreme court as to disturb relations between employers and employes and to create a basis for litigation contrary to the Ohio workmen's compensation plan and it is necessary that the rights and remedies of all employers and employes shall be brought within the plan for workmen's compensation in order to allay doubts as to rights and remedies and preserve industrial peace and progress in this state. Therefore this act shall go into immediate effect.' (118 Ohio Laws at 427.)"

{¶ d} "Employe" was at one time a commonly accepted spelling of "employee," but is no longer widely used. See Garner, A Dictionary of Modern Legal Usage (2d Ed.1995) 312 (although "employee" is now the standard widespread form, "[e]mploye was once common in English"); Black's Law Dictionary (9th Ed.2009) 602 (indicating that "employe" is an alternate spelling of "employee").

### A. Modern Case Law Establishing the Elements
### of a Common-Law Employer Intentional Tort

**{¶ 21}** Despite the emergence and development of the concept that recovery within the workers' compensation system was to be the exclusive remedy for employee injury in the workplace, this court in *Blankenship v. Cincinnati Milacron Chems., Inc.* (1982), 69 Ohio St.2d 608, 23 O.O.3d 504, 433 N.E.2d 572, devised an exception. *Blankenship'*s syllabus held that "[a]n employee is not precluded by Section 35, Article II of the Ohio Constitution, or by R.C. 4123.74[3] * * * from enforcing his common law remedies against his employer for an intentional tort."

**{¶ 22}** In *Blankenship*, the trial court granted the defendants' motion to dismiss the plaintiffs' suit, which alleged that the employer, a manufacturer of chemicals, had committed an intentional tort by exposing the plaintiffs to dangerous chemicals. The court of appeals affirmed the dismissal by reasoning that "the purpose of Section 35, Article II of the Ohio Constitution was to abolish civil actions by employees against complying employers for work-related injuries." Thus, courts lack jurisdiction over such claims. "To hold otherwise

---

3.  {¶ a} R.C. 4123.74 was amended in 1959 to provide that "[e]mployers who comply with section 4123.35 of the Revised Code [regarding payments into the state insurance fund] shall not be liable to respond in damages at common law or by statute for any injury, or occupational disease, or bodily condition, *received or contracted by any employee in the course of or arising out of his employment,* or for any death resulting from such injury, occupational disease, or bodily condition * * * whether or not * * * compensable under sections 4123.01 to 4123.94, inclusive, of the Revised Code." (Emphasis added.) 128 Ohio Laws 1334.

{¶ b} The phrase emphasized above, an important underlying basis for the decision in *Blankenship*, was inserted into R.C. 4123.74 in apparent response to decisions such as *Bevis v. Armco Steel Corp.* (1951), 156 Ohio St. 295, 46 O.O. 172, 102 N.E.2d 444, which had held that G.C. 1465-70, 118 Ohio Laws 422, 426, foreclosed a common-law action against an employer even when an injury fell totally outside the purview of the Workers' Compensation Act. See *Brady v. Safety-Kleen Corp.* (1991), 61 Ohio St.3d 624, 630, 576 N.E.2d 722 (remarking that the addition of the new language "effectively reinstated common-law redress where an injury was sustained neither in the course of nor arising out of the employment").

{¶ c} Current R.C. 4123.74 is "substantially similar" to the statutory version in effect when *Blankenship* was decided. *Talik v. Fed. Marine Terminals, Inc.*, 117 Ohio St.3d 496, 2008-Ohio-937, 885 N.E.2d 204, ¶ 15, fn. 3.

would clearly frustrate the enabling language of Art. II, Section 35 * * * and the legislative scheme embodied in R.C. 4123.74 * * *." *Blankenship v. Cincinnati Milacron Chems., Inc.* (Jan. 14, 1981), Hamilton App. No. C-790768, 1981 WL 9561, * 5.

{¶ 23} In reversing the dismissal, this court stated that "where an employee asserts in his complaint a claim for damages based on an intentional tort, '* * * the substance of the claim is not an "injury * * * received or contracted by any employee in the course of or arising out of his employment" within the meaning of R.C. 4123.74.' " *Blankenship*, 69 Ohio St.2d at 613, 23 O.O.3d 504, 433 N.E.2d 572, quoting *Delamotte v. Midland Ross Corp.* (1978), 64 Ohio App.2d 159, 161, 18 O.O.3d 117, 411 N.E.2d 814. This court further stated, "Since an employer's intentional conduct does not arise out of employment, R.C. 4123.74 does not bestow upon employers immunity from civil liability for their intentional torts and an employee may resort to a civil suit for damages." 69 Ohio St.2d at 613, 23 O.O.3d 504, 433 N.E.2d 572. Thus, the *Blankenship* court declared that workers' compensation is not always the exclusive remedy for certain intentional torts. It reversed the trial court's dismissal of the complaint and remanded the matter to the trial court for further proceedings without considering the merits of the plaintiffs' intentional-tort claims. Id. at 615-616, 23 O.O.3d 504, 433 N.E.2d 572.[4]

---

4. Two justices who did not join the majority opinion and who wrote separately in *Blankenship* in essence did not disagree with the general validity of the court's syllabus holding. See id. at 620-621, 23 O.O.3d 504, 433 N.E.2d 572 (Locher, J., concurring in part and dissenting in part) (agreeing with the syllabus "as an abstract proposition of law" in that "intentional torts fall outside the workers' compensation scheme," but stating that "[w]e should not circumvent the statutory framework for workers' compensation merely because a known risk existed. We should demand a virtual certainty"); id. at 620-621, 23 O.O.3d 504, 433 N.E.2d 572 (Holmes, J., dissenting) (opining that the syllabus "states broadly what might be considered as accurate law" regarding an employee's right to bring an intentional tort suit and that the syllabus established a "basic valid premise," but strongly denying that any intentional or malicious tort had been alleged given the facts of the case, so that dismissal of the complaint was appropriate).

**{¶ 24}** Notably, this court in *Blankenship* did not consider Section 35, Article II, beyond observing that it does not "expressly extend the grant of immunity to actions alleging intentional tortious conduct by employers against their employees." Id. at 612, 23 O.O.3d 504, 433 N.E.2d 572. See also id. at the syllabus.

**{¶ 25}** In *Jones v. VIP Dev. Co.* (1984), 15 Ohio St.3d 90, 95, 15 OBR 246, 472 N.E.2d 1046, this court followed up on *Blankenship* by rejecting the proposition that an employer's "specific intent to injure is necessary to a finding of intentional misconduct." Relying on Prosser & Keeton, Law of Torts (5th Ed.1984) 35-36, Section 8, and 1 Restatement of the Law 2d, Torts (1965) 15, Section 8A, the *Jones* court formulated a broadened definition of "intent." That definition focused not just on the specific consequences that an actor desires but also on those consequences that an actor believes are substantially certain to result from the actor's conduct. The court held at paragraph one of the syllabus: "An intentional tort is an act committed with the intent to injure another, or committed with the belief that such injury is substantially certain to occur." The court then applied this holding to the facts of three different cases accepted for review and resolved all three in favor of employees pursuing recovery for alleged employer intentional torts. Id. at 95-98, 15 OBR 246, 472 N.E.2d 1046.

**{¶ 26}** The *Jones* court also made two more noteworthy holdings. The court held at paragraph two of the syllabus that "[t]he receipt of workers' compensation benefits does not preclude an employee or his representative from pursuing a common-law action for damages against his employer for an intentional tort." The court held at paragraph three of the syllabus that "[a]n employer who has been held liable for an intentional tort is not entitled to a setoff

of the award in the amount of workers' compensation benefits received by the employee or his representative."[5]

{¶ 27} In the wake of *Blankenship* and *Jones*, the General Assembly enacted former R.C. 4121.80 in Am.Sub.S.B. No. 307, 141 Ohio Laws, Part I, 733-737, effective August 22, 1986. Former R.C. 4121.80(G)(1) defined "substantially certain" as requiring that an employer act "with deliberate intent to cause an employee to suffer injury, disease, condition, or death." 141 Ohio Laws, id., at 736.

{¶ 28} Having held that former R.C. 4121.80 did not apply to the case before it,[6] this court in *Van Fossen* endeavored to clarify the standards established in *Jones* for a common-law intentional tort. The court explained that trial courts had misconstrued the phrase "substantially certain to occur," essentially with the

---

5. {¶ a} Justice William B. Brown, the author of the majority opinion in *Blankenship*, was one of the dissenters in *Jones*. Justice Brown specifically disagreed with the majority's conclusion that the receipt of workers' compensation benefits does not preclude an employee from also pursuing a common-law employer intentional tort action: "One act of an employer cannot logically be within the scope of employment while at the same time not within the scope of employment. * * * One act of an employer, under *Blankenship*, simply cannot be both negligent and intentional. Hence, an injury may either be compensable under the workers' compensation system or be compensable at common law for an intentional tort. It cannot logically be compensable under both." *Jones*, 15 Ohio St.3d at 102, 15 OBR 246, 472 N.E.2d 1046 (William B. Brown, J., dissenting).

{¶ b} Justice Brown believed that the majority's decision in *Jones* undermined the balance of mutual compromise between the interests of the employer and the employee that is "the very theory of the workers' compensation system." Id. He further believed that the majority's decision, even if it might be based on strong public-policy considerations, was irreconcilable with the plain language of the second sentence of Section 35, Article II of the Ohio Constitution, because "[t]he *Blankenship* decision did not and indeed could not erase these dispositive words from the Ohio Constitution." *Jones* at 103, 15 OBR 246, 472 N.E.2d 1046.

6. The employee bringing the intentional-tort suit in *Van Fossen* was injured in 1983, prior to the effective date of former R.C. 4121.80. This court determined that the new statutory definition of "substantially certain" removed a potentially viable cause of action that had arisen under the standard established in *Jones* by "imposing a new, more difficult statutory restriction upon appellees' ability to bring the instant action." 36 Ohio St.3d at 109, 522 N.E.2d 489. This court held that under Section 28, Article II of the Ohio Constitution, former R.C. 4121.80(G) could not be retroactively applied to bar the cause of action, even though former R.C. 4121.80(H) expressly stated the General Assembly's intent that former R.C. 4121.80 was to be applied retrospectively. Id. at 108-109, 522 N.E.2d 489. See also *Kunkler v. Goodyear Tire & Rubber Co.* (1988), 36 Ohio St.3d 135, 137-138, 522 N.E.2d 477.

result of "transforming negligence cases into intentional tort cases." 36 Ohio St.3d at 115, 522 N.E.2d 489.

{¶ 29} The standards for a common-law employer intentional tort established in *Van Fossen*[7] were subsequently modified in *Fyffe v. Jeno's, Inc.* (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108, paragraphs one and two of the syllabus. Paragraph one of the syllabus of *Fyffe* states:

{¶ 30} "Within the purview of Section 8(A) of the Restatement of the Law 2d, Torts, and Section 8 of Prosser & Keeton on Torts (5 Ed.1984), in order to establish 'intent' for the purpose of proving the existence of an intentional tort committed by an employer against his employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to

---

7. {¶ a} Paragraph five of the syllabus of *Van Fossen* held:

{¶ b} "Within the purview of Section 8(A) of the Restatement of the Law 2d, Torts, and Section 8 of Prosser & Keeton on Torts (5 Ed.1984), in order to establish 'intent' for the purpose of proving the existence of an intentional tort committed by an employer against his employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty and not just a high risk; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task."

{¶ c} Paragraph six of the syllabus of *Van Fossen* held:

{¶ d} "To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. Where the risk is great and the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk – something short of substantial certainty – is not intent. (*Blankenship v. Cincinnati Milacron Chemicals, Inc.* [1982], 69 Ohio St.2d 608, 23 O.O.3d 504, 433 N.E.2d 572; and *Jones v. VIP Development Co.* [1984], 15 Ohio St.3d 90, 15 OBR 246, 472 N.E.2d 1046, explained.)"

the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task. (*Van Fossen v. Babcock & Wilcox Co.* [1988], 36 Ohio St.3d 100, 522 N.E.2d 489, paragraph five of the syllabus, modified as set forth above and explained.)"

{¶ 31} Paragraph two of the syllabus of *Fyffe* states:

{¶ 32} "To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk – something short of substantial certainty – is not intent. (*Van Fossen v. Babcock & Wilcox Co.* [1988], 36 Ohio St.3d 100, 522 N.E.2d 489, paragraph six of the syllabus, modified as set forth above and explained.)"

{¶ 33} In light of later decisions of this court striking down as unconstitutional several more enactments governing employer intentional torts (including former R.C. 4121.80), *Fyffe*'s common-law test for employer intentional torts applied until the General Assembly in House Bill 498, effective April 7, 2005, enacted the version of R.C. 2745.01 whose constitutionality is at issue in this case and in *Stetter*. In the case sub judice, the court of appeals, after it held current R.C. 2745.01 to be unconstitutional, evaluated Kaminski's claims under the *Fyffe* test.

*B. Brady v. Safety-Kleen Corp.*

**{¶ 34}** This court specifically addressed the constitutionality of former R.C. 4121.80[8] in *Brady v. Safety-Kleen Corp.* (1991), 61 Ohio St.3d 624, 576 N.E.2d 722. The syllabus holdings that emerged from *Brady* were:

**{¶ 35}** "1. A cause of action brought by an employee alleging intentional tort by the employer in the workplace is not preempted by Section 35, Article II of the Ohio Constitution, or by R.C. 4123.74 and 4123.741. While such cause of action contemplates redress of tortious conduct that occurs during the course of employment, an intentional tort alleged in this context necessarily occurs outside the employment relationship. (*Blankenship v. Cincinnati Milacron Chemicals, Inc.* [1982], 69 Ohio St.2d 608, 23 O.O.3d 504, 433 N.E.2d 572, approved and followed.)

**{¶ 36}** "2. R.C. 4121.80 exceeds and conflicts with the legislative authority granted to the General Assembly pursuant to Sections 34 and 35, Article II of the Ohio Constitution, and is unconstitutional *in toto*." *Brady*, 61 Ohio St.3d 624, 576 N.E.2d 722, at paragraphs one and two of the syllabus.

---

8. {¶ a} For the full text of former R.C. 4121.80, a lengthy and multifaceted statute regarding employer intentional torts, see *Brady*, 61 Ohio St.3d at 627, 576 N.E.2d 722, fn. 1. Highlights of the statute included requiring that an employee who recovered for an employer intentional tort was entitled to collect only the amount recovered in excess of workers' compensation benefits received (former R.C. 4121.80(A)); declaring that the immunity established in Section 35, Article II, and in workers' compensation statutes "is an essential aspect of Ohio's workers' compensation system" (former R.C. 4121.80(B)); providing that a court was to determine that an intentional tort was committed, that the Industrial Commission was to determine the amount of damages if the court made such a determination, and that the amount of damages was capped at one million dollars (former R.C. 4121.80(D)); and establishing an intentional-tort fund from which employee awards for intentional torts were to be paid, with the fund also paying for legal fees incurred by an employer in defending an action, as those fees were fixed by the Industrial Commission (former R.C. 4121.80(D), (E), and (F)).

{¶ b} In particular, former R.C. 4121.80(G)(1) provided:

{¶ c} " 'Intentional tort' is an act committed with the intent to injure another or committed with the belief that the injury is substantially certain to occur.

{¶ d} "Deliberate removal by the employer of an equipment safety guard or deliberate misrepresentation of a toxic or hazardous substance is evidence, the presumption of which may be rebutted, of an action committed with the intent to injure another if injury or an occupational disease or condition occurs as a direct result.

{¶ e} " 'Substantially certain' means that an employer acts with deliberate intent to cause an employee to suffer injury, disease, condition, or death." 141 Ohio Laws, Part I, 736.

{¶ 37} The court in *Brady* divided into a three-one-three result in which a justice who joined both paragraphs of the syllabus and concurred in the judgment did not join the plurality opinion. See id. at 635, 576 N.E.2d 722.

{¶ 38} The plurality opinion did not analyze any specific provision of former R.C. 4121.80, but directed its inquiry "to the threshold question of whether R.C. 4121.80, as a whole, transcends the limits of legislative power under the Ohio Constitution." Id. at 633, 576 N.E.2d 722.

{¶ 39} The plurality opinion then found, with little analysis and no citation of any authority, that the statute was "totally repugnant to" Section 34, Article II[9] in that "[a] legislative enactment that attempts to remove a right to a remedy under common law that would otherwise benefit the employee cannot be held to be a law that furthers the '* * * comfort, health, safety and general welfare of all employes * * *.' " *Brady*, 61 Ohio St.3d at 633, 576 N.E.2d 722.

{¶ 40} The plurality opinion in *Brady* then considered former R.C. 4121.80 in light of Section 35, Article II. The opinion stated that "the plain import" of the first sentence of Section 35 "indicates that the purpose of workers' compensation is to create a source of compensation for workers injured or killed *in the course of employment*. * * * As this court explained in *Blankenship* [69 Ohio St.2d at 614, 23 O.O.3d 504, 433 N.E.2d 572]: '* * * the protection afforded by the [Workers' Compensation] Act has always been for negligent acts and not for intentional conduct.' * * *

{¶ 41} "However, it is readily apparent that R.C. 4121.80 does not further the purposes of Section 35, Article II, but instead attempts to circumvent them

---

9. {¶ a} Section 34, Article II of the Ohio Constitution provides in its entirety:

{¶ b} "Laws may be passed fixing and regulating the hours of labor, establishing a minimum wage, and providing for the comfort, health, safety and general welfare of all employes; and no other provision of the constitution shall impair or limit this power."

completely." (Emphasis sic.) *Brady*, 61 Ohio St.3d at 633-634, 576 N.E.2d 722.[10]

{¶ 42} Although he joined both paragraphs of the syllabus and the judgment, Justice Herbert R. Brown did not accept some important parts of the plurality opinion and wrote separately in *Brady* to fill in "a gap" in the analysis. Id. at 639, 576 N.E.2d 722 (Herbert R. Brown, J., concurring). Although Justice Brown agreed that "R.C. 4121.80 is not authorized by Sections 34 and 35, Article II of the Ohio Constitution," id., he did not believe that this conclusion ended the inquiry:

{¶ 43} "This does not mean, however, that the General Assembly has *no* power to modify intentional tort law by legislation. The legislature may do so in the exercise of its police power. Cf. *State, ex rel. Yaple, v. Creamer* (1912), 85 Ohio St. 349, 97 N.E. 602 (enactment of Workers' Compensation Act prior to the adoption of Section 35, Article II was a valid exercise of the police power). However, while the General Assembly's exercise of the powers granted by Sections 34 and 35 of Article II is not limited by any other provision of the Ohio Constitution, * * * its exercise of the police power is. Thus, it is necessary to go beyond the analysis in the majority opinion and test the constitutionality of R.C. 4121.80 with reference to provisions of the Constitution other than Sections 34 and 35 of Article II." (Emphasis sic.) *Brady*, 61 Ohio St.3d at 640, 576 N.E.2d 722.

{¶ 44} Justice Brown then stated that former R.C. 4121.80(C) and (D) violated Section 5, Article I of the Ohio Constitution, which guarantees the right

---

10. In interpreting Section 35, the *Brady* plurality adopted the position expressed by a dissenting justice in a previous case, including the view that injuries resulting from an employer's intentional torts " '*are totally unrelated to the fact of employment*' " because " '[w]hen an employer intentionally harms his employee, that act effects a complete breach of the employment relationship, and for purposes of the legal remedy for such an injury, the two parties are not employer and employee, but intentional tortfeasor and victim.' " (Emphasis sic.) *Brady*, 61 Ohio

to a trial by jury, by requiring the Industrial Commission, and not a civil jury, to determine damages in an intentional-tort action. Id. He also reasoned that former R.C. 4121.80(D)'s cap on damages was unconstitutional. Id. at 641, 576 N.E.2d 722.

**{¶ 45}** The obvious implications of Justice Brown's separate opinion in *Brady* are that (1) although Sections 34 and 35 do not specifically authorize legislation in the area of employer intentional torts, those sections also do not limit the General Assembly's power to legislate in the area, and (2) intentional-tort legislation should be upheld if it does not violate any other constitutional provision. Significantly, the provisions Justice Brown objected to in former R.C. 4121.80(C) and (D) have no counterparts in the version of R.C. 2745.01 we review here.

**{¶ 46}** This court next had occasion to consider employer intentional-tort legislation in *Johnson v. BP Chems., Inc.* (1999), 85 Ohio St.3d 298, 707 N.E.2d 1107, which construed a version of R.C. 2745.01 enacted after *Brady* invalidated former R.C. 4121.80. For clarity of analysis, we defer our discussion of *Johnson* until later in this opinion.

### III. Analysis

**{¶ 47}** R.C. 2745.01, effective April 7, 2005, provides in its entirety:

**{¶ 48}** "(A) In an action brought against an employer by an employee, or by the dependent survivors of a deceased employee, for damages resulting from an intentional tort committed by the employer during the course of employment, the employer shall not be liable unless the plaintiff proves that the employer committed the tortious act with the intent to injure another or with the belief that the injury was substantially certain to occur.

---

St.3d at 634, 576 N.E.2d 722, quoting *Taylor v. Academy Iron & Metal Co.* (1988), 36 Ohio St.3d 149, 162, 522 N.E.2d 464 (Douglas, J., dissenting).

{¶ 49} "(B) As used in this section, 'substantially certain' means that an employer acts with deliberate intent to cause an employee to suffer an injury, a disease, a condition, or death.

{¶ 50} "(C) Deliberate removal by an employer of an equipment safety guard or deliberate misrepresentation of a toxic or hazardous substance creates a rebuttable presumption that the removal or misrepresentation was committed with intent to injure another if an injury or an occupational disease or condition occurs as a direct result.

{¶ 51} "(D) This section does not apply to claims arising during the course of employment involving discrimination, civil rights, retaliation, harassment in violation of Chapter 4112 of the Revised Code, intentional infliction of emotional distress not compensable under Chapters 4121 and 4123 of the Revised Code, contract, promissory estoppel, or defamation."

*A. The Statutory Intent*

{¶ 52} In construing current R.C. 2745.01, the court of appeals in the instant case reasoned:

{¶ 53} "R.C. 2745.01(A) provides that in an employer intentional tort action, the employee must prove 'that the employer committed the tortious act *with the intent to injure another or with the belief that the injury was substantially certain to occur*.' (Emphasis added.) * * *

{¶ 54} " 'Intent to injure' is clear and, therefore, is not defined in the statute. 'Substantially certain,' however, is not as clear. Therefore, the legislature provided a definition. R.C. 2745.01(B) defines 'substantially certain' as acting 'with deliberate intent to cause an employee to suffer an injury, a disease, a condition, or death.'

{¶ 55} "When we consider the definition of 'substantial certainty,' it becomes apparent that an employee does not have two ways to prove an intentional tort claim as R.C. 2745.01(A) suggests. The employee's two options

of proof become: (1) the employer acted with intent to injure or (2) the employer acted with deliberate intent to injure. Thus, under R.C. 2745.01, the only way an employee can recover is if the employer acted with the intent to cause injury." *Kaminski*, 175 Ohio App.3d 227, 2008-Ohio-1521, 886 N.E.2d 262, ¶ 29-31.

{¶ 56} As an initial matter, we agree with the court of appeals that the General Assembly's intent in enacting R.C. 2745.01, as expressed particularly in 2745.01(B), is to permit recovery for employer intentional torts only when an employer acts with specific intent to cause an injury, subject to subsections (C) and (D). See *Talik v. Fed. Marine Terminals, Inc.*, 117 Ohio St.3d 496, 2008-Ohio-937, 885 N.E.2d 204, ¶ 17 (the General Assembly in R.C. 2745.01 "modified the common-law definition of an employer intentional tort" by rejecting "the notion that acting with a belief that injury is substantially certain to occur is analogous to wanton misconduct"). See also *Stetter*, 125 Ohio St.3d 280, 2010-Ohio-1029, ____ N.E.2d ____, at paragraph three of the syllabus, in which we hold that R.C. 2745.01 does not eliminate the common-law cause of action for an employer intentional tort.

{¶ 57} This view is supported by the history of employer intentional-tort litigation in Ohio and by a comparison of the current statute to previous statutory attempts. See, e.g., *Van Fossen*, 36 Ohio St.3d at 108-109, 522 N.E.2d 489, holding that former R.C. 4121.80(G) (which bore a marked resemblance to current R.C. 2745.01(B)) imposed "a new, more difficult statutory restriction upon" an employee's ability to bring an employer intentional-tort action; *Johnson*, 85 Ohio St.3d at 310, 707 N.E.2d 1107 (Cook, J., dissenting) ("By enacting [former] R.C. 2745.01, the General Assembly sought to statutorily narrow [the] common-law definition [of employer intentional tort] to 'direct intent' torts only"). Accordingly, our task in this case and in *Stetter* is to determine whether the statute, insofar as it intends to significantly restrict actions for employer

intentional torts, survives scrutiny under certain provisions of the Ohio Constitution.

### B. *Sections 34 and 35, Article II of the Ohio Constitution*

**{¶ 58}** Our inquiry into the constitutionality of R.C. 2745.01 is guided by familiar and well-established standards. First, all statutes enjoy a strong presumption of constitutionality. "Before a court may declare unconstitutional an enactment of the legislative branch, 'it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible.' " *Arbino v. Johnson & Johnson*, 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, ¶ 25, quoting *State ex rel. Dickman v. Defenbacher* (1955), 164 Ohio St. 142, 57 O.O. 134, 128 N.E.2d 59, paragraph one of the syllabus.

**{¶ 59}** Second, "a fundamental principle of the constitutional separation of powers among the three branches of government is that the legislative branch of government is 'the ultimate arbiter of public policy.' " *Arbino* at ¶ 21, quoting *State ex rel. Cincinnati Enquirer, Div. of Gannett Satellite Information Network v. Dupuis*, 98 Ohio St.3d 126, 2002-Ohio-7041, 781 N.E.2d 163, ¶ 21. In fulfilling that role, the legislature is entrusted with the power to continually refine Ohio's laws to meet the needs of our citizens. *Arbino*, id.

**{¶ 60}** It is undisputed that Section 1, Article II of the Ohio Constitution, which vests all legislative power of the state in the General Assembly, empowers that body to enact any law that does not conflict with the Ohio or United States Constitution. See *State ex. rel Jackman v. Cuyahoga Cty. Court of Common Pleas* (1967), 9 Ohio St.2d 159, 162, 38 O.O.2d 404, 224 N.E.2d 906. This authority includes the power to "alter, revise, modify, or abolish the common law" as the General Assembly may deem necessary to further the common good. *Arbino* at ¶ 131 (Cupp, J., concurring). See *Thompson v. Ford* (1955), 164 Ohio St. 74, 79, 57 O.O. 96, 128 N.E.2d 111 (within the scope of its police powers, the General Assembly "may modify or entirely abolish common-law actions and

defenses"); accord *Strock v. Pressnell* (1988), 38 Ohio St.3d 207, 214, 527 N.E.2d 1235.

{¶ 61} Third, it is not the role of the courts to establish their own legislative policies or to second-guess the policy choices made by the General Assembly. " '[T]he General Assembly is responsible for weighing [policy] concerns and making policy decisions; we are charged with evaluating the constitutionality of their choices.' " *Groch v. Gen. Motors Corp.*, 117 Ohio St.3d 192, 2008-Ohio-546, 883 N.E.2d 377, ¶ 212, quoting *Arbino*, 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, at ¶ 113.

{¶ 62} We first consider Sections 34 and 35, Article II of the Ohio Constitution by examining the plain meaning of those provisions.

*1. Section 34, Article II of the Ohio Constitution*

{¶ 63} Section 34, Article II authorizes the General Assembly to enact laws "providing for the comfort, health, safety and general welfare of all employes." Clearly, this section states its grant of authority to the General Assembly in the affirmative ("Laws may be passed") and not in the negative or in the restrictive.

{¶ 64} In *Am. Assn. of Univ. Professors, Cent. State Univ. Chapter v. Cent. State Univ.* (1999), 87 Ohio St.3d 55, 717 N.E.2d 286 ("*AAUP II*"), a case decided after *Johnson*, this court considered the constitutionality of R.C. 3345.45, a statute addressing concerns over the decline in faculty teaching hours at public universities. The plaintiffs challenged the statute under Section 34, Article II, contending that Section 34 authorizes only those laws benefiting employees and arguing that the statute was unconstitutional because it burdened employees rather than benefiting them. Id. at 60, 717 N.E.2d 286.

{¶ 65} In rejecting these arguments and upholding the statute as "a valid exercise of legislative authority under Section 34, Article II of the Ohio Constitution," id. at paragraph two of the syllabus, we reasoned:

**{¶ 66}** "This court has repeatedly interpreted Section 34, Article II as a broad *grant* of authority to the General Assembly, not as a limitation on its power to enact legislation.  See, *e.g.*, *Rocky River v. State Emp. Relations Bd.* (1989), 43 Ohio St.3d 1, 14, 539 N.E.2d 103, 114.  [Plaintiffs'] position would require Section 34 to be read as a limitation, in effect stating:  'No law shall be passed on the subject of employee working conditions *unless it furthers* the comfort, health, safety and general welfare of all employees.'  Under that approach, however, Section 34 would prohibit all legislation imposing any burden whatsoever on employees, regardless of how beneficial to the public that legislation might be.  The invalidity of this position becomes strikingly apparent when viewed in the context of *existing* employment-related laws."  (Emphasis sic.)  Id. at 61, 717 N.E.2d 286.

**{¶ 67}** We recently reiterated that Section 34 does not limit the General Assembly's authority to legislate.  See *Lima v. State*, 122 Ohio St.3d 155, 2009-Ohio-2597, 909 N.E.2d 616, ¶ 11, quoting *AAUP II*, 87 Ohio St.3d at 61, 717 N.E.2d 286.[11]

**{¶ 68}** Decisions of this court after *Johnson* have therefore conclusively established that Section 34, Article II is not a limitation on the General Assembly's authority to legislate.

*2. Section 35, Article II of the Ohio Constitution*

**{¶ 69}** Just as Section 34, Article II is phrased as an affirmative grant of power to the General Assembly ("Laws may be passed"), Section 35, Article II also is expressed as an affirmative grant of power:  "For the purpose of providing compensation to workmen and their dependents, for death, injuries or

---

11.  This case is distinguishable from *Lima v. State* and *AAUP II* in that the legislation at issue in those cases was specifically enacted pursuant to Section 34, Article II (see *Lima v. State* at ¶ 14), but the legislation at issue in this case was not.  As noted later in this opinion, at ¶ 102, R.C. 2745.01 was enacted pursuant to Section 1, Article II of the Ohio Constitution.  However, the

occupational disease, occasioned in the course of such workmen's employment, *laws may be passed* establishing a state fund * * *." (Emphasis added.) Section 35 also specifies the effect of the exercise of that power by the General Assembly: The compensation "shall be in lieu of all other rights to compensation, or damages, for such death, injuries, or occupational disease," and employers who pay the premium or compensation provided by the workers' compensation laws "*shall not be liable to respond in damages at common law or by statute* for such death, injuries or occupational disease." (Emphasis added.)

{¶ 70} This court construed Section 35 in *Holeton v. Crouse Cartage Co.* (2001), 92 Ohio St.3d 115, 748 N.E.2d 1111. In that case, we considered whether former R.C. 4123.931, a workers' compensation subrogation statute enacted in 1995 (Am.Sub.H.B. No. 278, 146 Ohio Laws, Part II, 3596), violated Section 35. We concluded that it did not.[12]

{¶ 71} In rejecting the argument that the concept of a workers' compensation subrogation statute is repugnant to Section 35, this court in *Holeton* stated that "Section 35, Article II enables a displacement of the common law only to the extent necessary to provide the injured worker with an automatic recovery. Once payment of workers' compensation benefits is ensured, the employer may, without any disparagement to the bargained-for rights of the employee, seek to impose the loss upon the ultimate wrongdoer." Id. at 120, 748 N.E.2d 1111.

principle of those decisions that Section 34 is not a limitation on the General Assembly's authority is fully relevant to our consideration.

12. {¶ a} This court in *Holeton*, 92 Ohio St.3d at 135, 748 N.E.2d 1111, held that former R.C. 4123.931 did violate Sections 2, 16, and 19, Article I of the Ohio Constitution. We focus solely on the court's consideration of Section 35, Article II of the Ohio Constitution as relevant to this case.

{¶ b} In *Groch v. Gen. Motors Corp.*, 117 Ohio St.3d 192, 2008-Ohio-546, 883 N.E.2d 377, paragraph one of the syllabus, we upheld the facial constitutionality of current R.C. 4123.93 and 4123.931, the subrogation statutes enacted after the former statute was held unconstitutional in *Holeton*. Those statutes were enacted in 2002 Sub.S.B. No. 227, 149 Ohio Laws, Part II, 3716, effective April 9, 2003. See *Groch* at ¶ 28.

{¶ 72} We observed that concerns about the statute's diminishing or extinguishing the claimant's *tort* recovery were not relevant to an analysis under Section 35 because the statute did not affect the claimant's workers' compensation. "After the statute completes its task, * * * the claimant is always left with the full measure of compensation and benefits to which he or she is entitled under the Workers' Compensation Act." Id. We therefore concluded that the former statute did not "disrupt any of the rights or obligations of the claimant and the employer with regard to the payment of statutory workers' compensation benefits, and the balance of compromise upon which the viability of the workers' compensation system depends remains intact" and held that the former statute did not violate Section 35. Id., 92 Ohio St.3d at 121, 748 N.E.2d 1111.

{¶ 73} Thus, in *Holeton*, we held that Section 35 does not forbid legislation that affects employees' tort recovery without affecting employees' receipt of workers' compensation. It follows that Section 35 does not forbid the legislation before us today, which affects employees' recovery for intentional torts, but not receipt of workers' compensation. Viewed from an employee's perspective, Section 35 addresses and authorizes recovery under the Workers' Compensation Act. Legislation that does not affect that recovery falls outside of any Section 35 concerns. See *Brady*, 61 Ohio St.3d at 640, 576 N.E.2d 722 (Herbert R. Brown, J., concurring) ("Intentional torts do not * * * come within the scope of Section 35, Article II").

{¶ 74} This court also recognized that Section 35 is a broad grant of authority to the General Assembly in *Bickers v. W. & S. Life Ins. Co.,* 116 Ohio St.3d 351, 2007-Ohio-6751, 879 N.E.2d 201: "It is within the prerogative and authority of the General Assembly to make [choices] when determining policy in the workers' compensation arena and in balancing, in that forum, employers' and employees' competing interests. See, e.g., *Rambaldo v. Accurate Die Casting*

(1992), 65 Ohio St.3d 281, 288, 603 N.E.2d 975.  We may not override [those choices] and [impose our own preferences] on this wholly statutory system.  Id.

**{¶ 75}** "Moreover, it would be inappropriate for the judiciary to presume the superiority of its policy preference and supplant the policy choice of the legislature.  For it is the legislature, and not the courts, to which the Ohio Constitution commits the determination of the policy compromises necessary to balance the obligations and rights of the employer and employee in the workers' compensation system.  Section 35, Article II, Ohio Constitution." *Bickers,* 116 Ohio St.3d 351, 2007-Ohio-6751, 879 N.E.2d 201, ¶ 23-24.

**{¶ 76}** As illustrated by the above discussion, Section 35, Article II, like Section 34, Article II, is a *grant* of authority to the General Assembly, not a *restriction* of that body's authority to legislate.

**{¶ 77}** This would end our analysis of the constitutionality of the employer intentional-tort statute before us under Sections 34 and 35, except for this court's decision in *Johnson*.

### C.  Johnson v. BP Chems., Inc.

**{¶ 78}** The employer intentional-tort legislation construed in *Johnson*, former R.C. 2745.01, was enacted in Am.H.B. No. 103, 146 Ohio Laws, Part I, 756, 760, effective November 1, 1995.[13]

---

13. {¶ a} In *State ex rel. Ohio AFL-CIO v. Voinovich* (1994), 69 Ohio St.3d 225, 230, 631 N.E.2d 582, this court invalidated a previous version of R.C. 2745.01, which was enacted by Am.Sub.H.B. No. 107, 145 Ohio Laws, Part II, 3040-3041, and signed by the governor on July 21, 1993.  We held that the inclusion of employer intentional-tort legislation in the bill violated Section 15(D), Article II of the Ohio Constitution (the one-subject rule).  Id. at 230, 631 N.E.2d 582.  After that decision, the General Assembly "simply * * * revived and restated" the same legislation as the version of R.C. 2745.01 that this court reviewed in *Johnson*.  See *Johnson*, 85 Ohio St.3d at 304, 707 N.E.2d 1107, fn. 5.

{¶ b} For the full text of the version of former R.C. 2745.01 at issue in *Johnson*, see 85 Ohio St.3d at 301-302, 707 N.E.2d 1107, fn. 2.  This statute was not as comprehensive as former R.C. 4121.80, which was struck down in *Brady*.  However, as will be explained later in this opinion, former R.C. 2745.01 contained a number of provisions that do not appear in the version of the statute that we review in the case sub judice.

**{¶ 79}** This court in *Johnson* stated: "In *Brady*, the court invalidated former R.C. 4121.80 in its entirety, and, in doing so, we thought that we had made it abundantly clear that any statute created to provide employers with immunity from liability for their intentional tortious conduct cannot withstand constitutional scrutiny. * * * Notwithstanding, the General Assembly has enacted R.C. 2745.01, and, again, seeks to cloak employers with immunity. In this regard, we can only assume that the General Assembly has either failed to grasp the import of our holdings in *Brady* or that the General Assembly has simply elected to willfully disregard that decision. In any event, we will state again our holdings in *Brady* and hopefully put to rest any confusion that seems to exist with the General Assembly in this area." *Johnson*, 85 Ohio St.3d at 304, 707 N.E.2d 1107.

**{¶ 80}** Having thus restated *Brady*'s "holdings"[14] regarding Sections 34 and 35 and similarly deciding that the statute at issue violated those provisions, the court in *Johnson* next declared that "the constitutional impediments at issue in

---

{¶ c} In Section 3 of Am.Sub.H.B. No. 103, 146 Ohio Laws, Part I, 758, the General Assembly declared its intent "to supersede the effect of the Ohio Supreme Court decisions in" *Blankenship*; *Jones*; *Van Fossen*; *Pariseau v. Wedge Prods., Inc.* (1988), 36 Ohio St.3d 124, 522 N.E.2d 511; *Hunter v. Shenango Furnace Co.* (1988), 38 Ohio St.3d 235, 527 N.E.2d 871; and *Fyffe* "to the extent that" the provisions of former R.C. 2745.01 were "to completely and solely control all causes of action not governed by Section 35 of Article II, Ohio Constitution, for physical or psychological conditions, or death, brought by employees or the survivors of deceased employees against employers." See *Johnson*, 85 Ohio St.3d at 303, 707 N.E.2d 1107, fn. 4.

14. {¶ a} By calling certain parts of the opinion in *Brady* "holdings" when they received the support of only three justices, the plurality in *Johnson* elevated those parts of *Brady* to a status that they did not actually merit. To be precise, the only explicit holdings in *Brady* were in the syllabus paragraphs, because that was the only part of that decision that received the support of a majority of the justices. See *Hedrick v. Motorists Mut. Ins. Co.* (1986), 22 Ohio St.3d 42, 44, 22 OBR 63, 488 N.E.2d 840, overruled on other grounds, *Martin v. Midwestern Group Ins. Co.* (1994), 70 Ohio St.3d 478, 639 N.E.2d 438 (when a plurality opinion yields a syllabus that received the votes of four justices, "the only law emanating from [that decision] is contained in the syllabus").

{¶ b} The General Assembly eliminated many of the provisions of former R.C. 4121.80 that had been identified in *Brady* as problematic when it enacted the version of former R.C. 2745.01 that was at issue in *Johnson*. Therefore, the *Johnson* admonishing of the General Assembly for even enacting former R.C. 2745.01 can be viewed as inappropriate. It was by no means "abundantly clear" in the wake of this court's split opinion in *Brady* that the General Assembly

*Brady*, concerning former R.C. 4121.80, also apply with equal force to R.C. 2745.01," in that both statutes were enacted to provide immunity from suits by employees based on "intentional tortious conduct of employers in the workplace." Id. at 305, 707 N.E.2d 1107.

{¶ 81} The court in *Johnson* then went on to detail some of the specifics of former R.C. 2745.01 that it viewed as objectionable. For example, former R.C. 2745.01(A) limited an employer's liability for an "employment intentional tort," as defined by former R.C. 2745.01(D)(1) to " 'an act committed by an employer in which the employer *deliberately and intentionally* injures, causes an occupational disease of, or causes the death of an employee.' " (Emphasis sic.) Id. at 306, 707 N.E.2d 1107, quoting former R.C. 2745.01(D)(1).

{¶ 82} In addition, the court in *Johnson* expressed disapproval of other provisions of the statute, including former R.C. 2745.01(B)'s requirement that an intentional tort must be demonstrated by clear and convincing evidence, (C)(1)'s application of a clear-and-convincing-evidence standard to withstand an employer's motion for summary judgment, (C)(2)'s requirement that every court filing be signed by an attorney or by a party, and (C)(2)'s additional requirement that the court impose sanctions for noncompliance. Id., 85 Ohio St.3d at 306, 707 N.E.2d 1107. The court stated that "[b]y establishing the foregoing standards in R.C. 2745.01, the General Assembly has created a cause of action that is simply illusory," id., and held former R.C. 2745.01 unconstitutional in its entirety. Id. at syllabus.

{¶ 83} Three members of this court dissented in *Johnson*. Justice Cook's dissenting opinion, joined by two other justices, noted that there are two types of employer intentional torts. Citing *Harasyn v. Normandy Metals, Inc.* (1990), 49 Ohio St.3d 173, 175, 551 N.E.2d 962, this dissent observed that "direct intent"

could not legislate in the area of employer intentional torts, *Johnson,* 85 Ohio St.3d at 304, 707 N.E.2d 1107, particularly in light of Justice Brown's concurring opinion in that case.

torts are those in which the actor's action brings about the exact result desired, while "inferred intent" torts are those in which the actor believes his action is "substantially certain" to cause a particular result, even if the actor does not desire to bring that result about. Id., 85 Ohio St.3d at 309-310, 707 N.E.2d 1107. "By enacting R.C. 2745.01, the General Assembly sought to statutorily narrow that common-law definition to 'direct intent' torts only." Id. at 310, 707 N.E.2d 1107 (Cook, J., dissenting).

{¶ 84} Justice Cook wrote that Sections 34 and 35 of Article II are both solely grants of authority and cannot be read as limiting the General Assembly's power to enact legislation in the area of employer intentional torts. Id. at 310-311, 707 N.E.2d 1107. Furthermore, Justice Cook stated that "Section 35, Article II cannot be *both* inapplicable to employer intentional torts and, at the same time, offended by any legislation regulating such torts. Yet those are exactly the contradictory conclusions reached by *Brady* and followed here." (Emphasis added.) Id. at 311-312, 707 N.E.2d 1107.

{¶ 85} Justice Lundberg Stratton's dissenting opinion in *Johnson* characterized the majority's holding as striking down "a constitutionally valid attempt by the General Assembly to restore balance between employees' and employers' rights in the context of workplace injuries." Id. at 314, 707 N.E.2d 1107 (Lundberg Stratton, J., dissenting). Justice Lundberg Stratton stated that only injuries caused by truly intentional acts should be recognized as the basis for an intentional-tort action, and that all other injuries should be compensable only through the workers' compensation system. Id. at 316, 707 N.E.2d 1107.

{¶ 86} Justice Lundberg Stratton also took issue with the majority's conclusion, based upon *Brady*, that former R.C. 2745.01 violated Section 34, Article II because it removed a right to a remedy: "R.C. 2745.01, which requires 'deliberate intent' to cause injury, does not remove a right to a remedy; it merely restores the definition of intentional tort to its proper and original, bargained-for

28

definition." Id. at 318, 707 N.E.2d 1107. She noted that remedies continued to be available to all injured workers after the enactment of the former statute. Id. at 318, 707 N.E.2d 1107.

{¶ 87} As to Section 35, Article II, Justice Lundberg Stratton stated, "The General Assembly had authority to enact R.C. 2745.01 under its general grant of legislative power [under Section 1, Article II of the Ohio Constitution] and did not need to rely on the specific grant of authority in Section 35, Article II of the Ohio Constitution. And, in fact, the General Assembly [in Section 3 of Am.H.B. No. 103] specifically stated that R.C. 2745.01 was to control actions *not* governed by Section 35, Article II of the Ohio Constitution." (Emphasis sic.) Id. at 319, 707 N.E.2d 1107. Justice Lundberg Stratton reasoned that because the General Assembly through its police power has the authority to modify or abolish common-law actions and defenses and to codify the common law, former R.C. 2745.01 was a valid exercise of the police power as "a codification and modification of employer intentional tort case law." Id. at 320, 707 N.E.2d 1107.

## D. Johnson and Stare Decisis

{¶ 88} Metal & Wire asserts that this court in *Johnson* misconstrued Sections 34 and 35 and that the decision is severely flawed. Metal & Wire asserts that we should hold R.C. 2745.01 constitutional as not in violation of Sections 34 and 35 and overrule *Johnson*, consistent with the three-part test for overruling precedent established in *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, paragraph one of the syllabus ("A prior decision of the Supreme Court may be overruled where (1) the decision was wrongly decided at that time, or changes in circumstances no longer justify continued adherence to the decision, (2) the decision defies practical workability, and (3) abandoning the precedent would not create an undue hardship for those who have relied upon it").

{¶ 89} Metal & Wire does not specifically argue that *Brady* should be overruled. This position recognizes that *Brady* was a plurality decision with

limited stare decisis value for the issues we review in this case. See *Hedrick v. Motorists Mut. Ins. Co.* (1986), 22 Ohio St.3d 42, 44, 22 OBR 63, 488 N.E.2d 840, overruled on other grounds by *Martin v. Midwestern Group Ins. Co.* (1994), 70 Ohio St.3d 478, 639 N.E.2d 438 (when a plurality opinion yields a syllabus that received the votes of four justices, "the only law emanating from [that decision] is contained in the syllabus").[15]

{¶ 90} Metal & Wire's principal arguments for overruling *Johnson* are that the doctrine of stare decisis should be applied with greater flexibility in cases of constitutional adjudication, which cannot be corrected by the legislature as can cases involving statutory interpretation. Metal & Wire further argues that the pragmatic concerns of the second and third *Galatis* factors have less relevance in cases involving constitutional interpretation and should be applied with more flexibility in such cases.

{¶ 91} We recognize a considerable degree of merit in Metal & Wire's arguments concerning the *Galatis* test's application in constitutional adjudication, and we accept that there are serious internal flaws in the analysis of Section 34 and 35 set forth in *Johnson*, as we discuss below. However, because a different statute was at issue in *Johnson*, we constrain the interpretation of Section 34 and 35 to the specific context of that case, and we decline to overrule *Johnson*.

---

15. Metal & Wire also asserts that there are fundamental differences between the statute at issue in *Brady* and the statute we review in this case, based largely on the fact that the *Brady* statute created a questionable hybrid system that required that the Industrial Commission determine damages in an intentional-tort action even though a trial court determined liability. Based on these differences, Metal & Wire implies that *Brady* need not be overruled. It suggests that *Brady* was correct in holding that these provisions of former R.C. 4121.80 could not withstand scrutiny under Section 35 in that (1) the former statute purported to transfer jurisdiction to the Industrial Commission over intentional-tort awards, (2) intentional-tort awards are outside the scope of Section 35, and (3) as the *Brady* plurality stated, "The General Assembly has no power to confer jurisdiction on the commission except as authorized by" Section 35. See 61 Ohio St.3d at 634, 576 N.E.2d 722. In contrast, current R.C. 2745.01, like the version struck down in *Johnson*, contains no such provisions.

*1. Johnson's Interpretations of Section 34 and 35, Article II of the Ohio Constitution*

**{¶ 92}** Notwithstanding the clear text of Section 34, this court in *Johnson* interpreted Section 34 as placing substantive limits on the General Assembly's authority to enact employer intentional-tort legislation. However, *AAUP II*, 87 Ohio St.3d 55, 717 N.E.2d 286, and *Lima v. State*, 122 Ohio St.3d 155, 2009-Ohio-2597, 909 N.E.2d 616, contradict *Johnson*'s view that Section 34 limits the General Assembly's authority to enact legislation. Because *Lima v. State* and *AAUP II* are the more recent and controlling authorities regarding Section 34, they have effectively superseded the interpretation given to that section by *Johnson*. Consequently, the decision in *Johnson* has no stare decisis value on this issue. Because Section 34 is not a limitation on the General Assembly's authority, it necessarily follows that R.C. 2745.01 does not violate it.

**{¶ 93}** Similarly, notwithstanding the clear text of Section 35, this court in *Johnson* in effect held that any legislative attempt to govern employer intentional torts is per se invalid under that section, asserting that this area of law " 'is beyond the reach of constitutional empowerment.' " Id., 85 Ohio St.3d at 308, 707 N.E.2d 1107, quoting *Brady*, 61 Ohio St.3d at 634, 576 N.E.2d 722.

**{¶ 94}** Such an interpretation of Section 35 cannot be reconciled with the plain language of the section or with the historical underpinnings of its enactment. Moreover, *Johnson*'s interpretation is inconsistent with the later, and more accurate, view of Section 35 expounded in *Holeton*, 92 Ohio St.3d 115, 748 N.E.2d 1111, and in *Bickers,* 116 Ohio St.3d 351, 2007-Ohio-6751, 879 N.E.2d 201. Therefore *Johnson*'s analysis of Section 35 can have no stare decisis value in our inquiry. Section 35 is simply irrelevant to the constitutionality of R.C. 2745.01. Because Section 35 is not a limitation on the General Assembly's authority to legislate in the area of employer intentional torts, it necessarily follows that R.C. 2745.01 does not violate Section 35.

## 2. *Johnson's Reliance on Other Grounds*

{¶ 95} In addition to relying on *Johnson*'s interpretation of Sections 34 and 35 of Article II to assert that current R.C. 2745.01 is unconstitutional, Kaminski also raises additional aspects of *Johnson* touching upon other provisions of the Ohio Constitution. Kaminski specifically invokes the right-to-a-remedy and due-process provisions of Section 16, Article I, even though *Johnson* did not explicitly and independently rely on those provisions in striking down the statute reviewed in that case. Notably, the court of appeals in this case did not address the constitutionality of R.C. 2745.01 under Section 16, Article I.

{¶ 96} The *Johnson* court's conclusion that former R.C. 2745.01 was unconstitutional obviously included additional grounds beyond just Section 34 and 35 concerns. The majority believed that former R.C. 2745.01 was unconstitutional because the burdens it imposed were simply too onerous. The statute made recovery for an employer intentional tort too difficult, in the majority's assessment, rendering the cause of action too "illusory" to be constitutionally valid. 85 Ohio St.3d at 306-308, 707 N.E.2d 1107. See also *Stetter,* 125 Ohio St.3d 280, 2010-Ohio-1029, ___ N.E.2d ___, at ¶ 43-60, in which we specifically consider the constitutionality of current R.C. 2745.01 under the right-to-a-remedy and open-court provisions of Section 16, Article I of the Ohio Constitution.

{¶ 97} The statute we review here differs considerably from the former version of R.C. 2745.01 at issue in *Johnson*. The General Assembly did not simply reenact the same statute that *Johnson* held unconstitutional. Because we review here a statute with provisions differing in key aspects from the statute struck down in *Johnson*, we need not overrule *Johnson* to limit its precedential value. See *Arbino*, 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, at ¶ 24 ("The statutes before us * * * are sufficiently different from the previous enactments to avoid the blanket application of stare decisis and to warrant a fresh

review of their individual merits"); *Groch*, 117 Ohio St.3d 192, 2008-Ohio-546, 883 N.E.2d 377, at ¶ 147. This approach is consistent with *Arbino* and *Groch*, which did not overrule previous decisions in similar situations.

*E. Additional Considerations*

{¶ 98} Because the statute under consideration in this case constrains rather than abolishes an employee's cause of action for an employer intentional tort, we need not, and therefore do not, consider whether a statute abolishing the common-law tort would be constitutional. Nor do we need to revisit the holding in *Blankenship* that employer intentional torts are outside the scope of employment in order to evaluate the constitutionality of the instant statute. It is clear from our foregoing analysis herein that the General Assembly is not constitutionally proscribed from legislating in this area of law under Sections 34 and 35, Article II.

{¶ 99} R.C. 2745.01 by no means places Ohio outside the national mainstream relative to employer intentional torts and the exclusivity of the workers' compensation remedy. Rather, R.C. 2745.01 appears to harmonize the law of this state with the law that governs a clear majority of jurisdictions.

{¶ 100} "[T]he common-law liability of the employer cannot, under the almost unanimous rule, be stretched to include accidental injuries caused by the gross, wanton, wilful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of a conscious and deliberate intent directed to the purpose of inflicting an injury."[16]

---

16. Professor Larson's treatise reasons that the best legal theory to support an exception to workers' compensation exclusivity for intentional torts is that an intentionally committed act cannot be "accidental." 6 Larson's Workers' Compensation Law (2008), Section 103.01. It further reasons that "[e]ven if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering employees to perform an extremely dangerous job, wilfully failing to furnish a safe place to work, wilfully violating a safety statute, failing to protect employees from crime, refusing to respond to an employee's medical needs and restrictions, or withholding information about

(Footnote omitted.) 6 Larson's Workers' Compensation Law (2008), Section 103.03. Furthermore, "Ohio is one of only eight states that have judicially adopted a 'substantial certainty' standard for employer intentional torts." (Footnote omitted.) *Talik*, 117 Ohio St.3d 496, 2008-Ohio-937, 885 N.E.2d 204, ¶ 32, citing 6 Larson's Workers' Compensation Law (2007) 103-10, Section 103.04[1].

{¶ 101} Reduced to its most basic level, our decision today is grounded in the recognition that Sections 34 and 35 actually mean what they say. Accordingly, for all the reasons set forth above, we hold that R.C. 2745.01 does not violate Section 34 or 35, Article II of the Ohio Constitution. To the extent that *Johnson* misconstrued those sections, we limit its reach to the particular statute that was at issue in that case. We therefore reverse the judgment of the court of appeals, which was solely based on *Johnson*'s erroneous interpretations of Sections 34 and 35.

{¶ 102} That is not the end of our inquiry, however. R.C. 2745.01 was enacted pursuant to the broad grant of legislative authority under Section 1, Article II of the Ohio Constitution. Although the statute does not violate Sections 34 or 35, it does not necessarily follow from that alone that the statute is constitutional, because it might contravene one or more other provisions of the Ohio Constitution. Having held that *Johnson* mandated the conclusion that R.C. 2745.01 violated Sections 34 and 35, the appellate court in this case declined to consider additional arguments challenging the statute's constitutionality. In *Stetter*, we analyze whether R.C. 2745.01 offends other constitutional provisions,

---

worksite hazards, the conduct still falls short of actual intention to injure that robs the injury of accidental character." (Footnotes omitted.) Id. at Section 103.03.

and we determine that it does not. Accordingly, as did the trial court below in this case, we hold that R.C. 2745.01 is constitutional.[17]

### F. Application of R.C. 2745.01 to this Case

{¶ 103} Because R.C. 2745.01 is constitutional, the standards contained in the statute govern employer intentional-tort actions, and the statutory standards apply rather than the common-law standards of *Fyffe*. We must consider then whether the trial court properly granted summary judgment to Metal & Wire based on R.C. 2745.01. Under Civ.R. 56(C), summary judgment is appropriate when all relevant materials filed in the action reveal that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The filed materials must be construed most strongly in the nonmoving party's favor, and "summary judgment shall not be rendered" unless those materials establish that "reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made * * *." Id.; *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 686-687, 653 N.E.2d 1196; *Sinnott v. Aqua-Chem, Inc.,* 116 Ohio St.3d 158, 2007-Ohio-5584, 876 N.E.2d 1217, ¶ 29. Our consideration of whether summary judgment is appropriate is de novo. *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8.

{¶ 104} Nothing in this case implicates R.C. 2745.01(C) or (D). Furthermore, construing all materials in a light most favorable to Kaminski, we find nothing in the record demonstrating that Kaminski can prove that her employer committed a tortious act with the intent to injure her or that the employer acted with deliberate intent to cause her to suffer an injury for purposes of R.C. 2745.01(A) and (B). The only conclusion that can be reached on this

---

17. Due to our conclusions in this case and in *Stetter* that R.C. 2745.01 does not violate Section 34 or 35 of the Ohio Constitution and that the statute is otherwise constitutional, we decline to address Metal & Wire's third proposition of law, which takes issue with the court of appeals' application of the common-law *Fyffe* test to the facts of this case. That proposition is now moot.

record under R.C. 2745.01 is that there is no genuine issue as to any material fact. Consequently, there is no need to consider remanding this cause to the court of appeals for further consideration. Metal & Wire is entitled to summary judgment as a matter of law, and we reinstate the trial court's grant of summary judgment in its favor.

## IV. Conclusion

{¶ 105} In conclusion, for the reasons discussed above, we reverse the judgment of the court of appeals, and we hold R.C. 2745.01 constitutional on the grounds at issue in this case. We accordingly reinstate the trial court's grant of summary judgment in favor of Metal & Wire.

Judgment reversed.

MOYER, C.J., and LUNDBERG STRATTON and O'DONNELL, JJ., concur.

O'CONNOR, J., concurs in judgment only.

LANZINGER, J., concurs in part.

PFEIFER, J., dissents.

_____

**LANZINGER, J., concurring in part.**

{¶ 106} Although I agree that R.C. 2745.01 does not violate Section 34 or 35, Article II of the Ohio Constitution, I respectfully concur only in part because I would overrule *Johnson v. BP Chems., Inc.* (1999), 85 Ohio St.3d 298, 707 N.E.2d 1107, rather than artificially limiting it.

{¶ 107} This case joins a line of decisions that rather than overruling a prior case, limit or otherwise distinguish that case,[18] thereby avoiding an analysis

---

18. See *Groch v. Gen. Motors Corp.*, 117 Ohio St.3d 192, 2008-Ohio-546, 883 N.E.2d 377 (limiting but not overruling our decision in *Brennaman v. R.M.I. Co.* (1994), 70 Ohio St.3d 460, 639 N.E.2d 425); *Arbino v. Johnson & Johnson*, 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420 (distinguishing but not overruling our decision in *State ex rel. Ohio Academy of Trial Lawyers v. Sheward* (1999), 86 Ohio St.3d 451, 715 N.E.2d 1062); *State ex rel. Shelly Materials, Inc. v. Clark Cty. Bd. of Commrs.*, 115 Ohio St.3d 337, 2007-Ohio-5022, 875 N.E.2d 59 (limiting but not overruling our decision in *State ex rel. R.T.G., Inc. v. State*, 98 Ohio St.3d 1, 2002-Ohio-

under *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256. For the reasons I previously expressed in *Groch v. Gen. Motors Corp.*, 117 Ohio St.3d 192, 2008-Ohio-546, 883 N.E.2d 377, I would yield to a broader system of analysis that would also allow us greater freedom and enable us to be straightforward about overruling wrongly decided cases when it is necessary. Here, the court of appeals concluded, based upon *Johnson*, that R.C. 2745.01 was unconstitutional and in violation of Sections 34 and 35, Article II of the Ohio Constitution. The majority opinion takes great pains to show how *Johnson*'s analysis of these constitutional sections was seriously flawed. Yet instead of cleanly and honestly overruling the case, the majority merely limits *Johnson* "to the specific context of that case." Majority opinion at ¶ 91. This is done in spite of our now contrary position that Section 34 is *not* a limitation on the General Assembly's authority to enact legislation in the area of employer intentional torts.

{¶ 108} "To serve the need for predictability, consistency, and clarity in the law, we must be forthright about overruling cases when that is our true intent and is the practical effect of a decision." *Groch*, 117 Ohio St.3d 192, 2008-Ohio-546, 883 N.E.2d 377 at ¶224 (Lanzinger, J., concurring in part). To do otherwise leads to confusion, leaving parties to struggle to determine what law is controlling.

_____

**PFEIFER, J., dissenting.**

{¶ 109} The court below relied on *Johnson v. BP Chems., Inc.* (1999), 85 Ohio St.3d 298, 707 N.E.2d 1107, in determining that R.C. 2745.01 is unconstitutional. That reliance was appropriate. *Johnson* made it clear in

6716, 780 N.E.2d 998); and *Cleveland Mobile Radio Sales, Inc. v. Verizon Wireless*, 113 Ohio St.3d 394, 2007-Ohio-2203, 865 N.E.2d 1275 (distinguishing but not overruling our decision in *Rosette v. Countrywide Home Loans, Inc.*, 105 Ohio St.3d 296, 2005-Ohio-1736, 825 N.E.2d 599).

decisive terms that the General Assembly could not constitutionally prevent employees from recovering civil damages for injuries caused by their employers' intentional tortious conduct. In *Johnson*, this court noted that the General Assembly had already attempted to grant employers such immunity in former R.C. 4121.80 and that that statute had been struck down by this court in *Brady v. Safety-Kleen Corp.* (1991), 61 Ohio St.3d 624, 576 N.E.2d 722. This court wrote in *Johnson*:

{¶ 110} "Notwithstanding, the General Assembly has enacted R.C. 2745.01, and, again, seeks to cloak employers with immunity. In this regard, we can only assume that the General Assembly has either failed to grasp the import of our holdings in *Brady* or that the General Assembly has simply elected to willfully disregard that decision." *Johnson*, 85 Ohio St.3d at 304, 707 N.E.2d 1107.

{¶ 111} Déjà vu.

{¶ 112} The court noted in *Johnson* that although certain aspects of former R.C. 4121.80 were different from the version of R.C. 2745.01 at issue in *Johnson*, the purposes of both were the same:

{¶ 113} "Clearly, the constitutional impediments at issue in *Brady*, concerning former R.C. 4121.80, also apply with equal force to R.C. 2745.01. Both statutes were enacted to serve identical purposes. Like former R.C. 4121.80, R.C. 2745.01 was created to provide immunity for employers from civil liability for employee injuries, disease, or death caused by the intentional tortious conduct of employers in the workplace." *Johnson*, 85 Ohio St.3d at 305, 707 N.E.2d 1107.

{¶ 114} Déjà vu.

{¶ 115} In *Johnson*, this court held that a statutory scheme that allows an employee to recover civil damages only if his or her employer acts deliberately and intentionally creates only an illusory cause of action:

{¶ 116} "By establishing the foregoing standards in R.C. 2745.01, the General Assembly has created a cause of action that is simply illusory. Under the definitional requirements contained in the statute, an employer's conduct, in order to create civil liability, must be both *deliberate* and *intentional*. Therefore, in order to prove an intentional tort in accordance with R.C. 2745.01(D)(1), the employee, or his or her survivors, must prove, at a minimum, that the actions of the employer amount to criminal assault." (Emphasis sic.) *Johnson*, 85 Ohio St.3d at 306, 707 N.E.2d 1107.

{¶ 117} Déjà vu.

{¶ 118} In all pertinent regards, the statute this court addresses today is the same as the one it addressed in *Johnson*. Only the result in this case is different. As the majority decision points out in its discussion of the history of workplace intentional torts in Ohio, ever since this court recognized an employee's right to civil damages for injuries suffered due to his or her employer's intentional acts, the General Assembly has sought to squelch that right. This court's recognition of the availability of recovery for workplace intentional torts in *Blankenship v. Cincinnati Milacron Chems., Inc.* (1982), 69 Ohio St.2d 608, 23 O.O.3d 504, 433 N.E.2d 572, and its holding that a specific intent to injure is not necessary to prove intentional misconduct in *Jones v. VIP Dev. Co.* (1984), 15 Ohio St.3d 90, 15 OBR 246, 472 N.E.2d 1046, begat former R.C. 4121.80, which begat this court's response in *Brady*, which begat another attempt by the General Assembly to foreclose employer liability in former R.C. 2745.01, which begat this court's strong contrary response in *Johnson*, which begat the General Assembly's third legislative attempt to end liability for workplace intentional torts with R.C. 2745.01. In the midst of that tug of war, this court developed in *Fyffe v. Jeno's, Inc.* (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108, a workable common-law test to determine the requisite intent to prove a workplace intentional tort, a test rooted in Section 8(A) of the Restatement of Law

2d, Torts.  But today, the cycle ends, as the General Assembly has found a court that agrees with it: workers have no constitutionally protected right to seek redress for injuries suffered from their employer's intentional torts.

{¶ 119}  That this court reaches that decision today is, standing alone, no sin.  The common law does, necessarily, evolve and change.  The common law, however, should not be ignored; its repudiation should at least be acknowledged.  Without overturning years of contrary precedent, this court anoints the General Assembly's abolition of workplace intentional torts.

{¶ 120}  I disagree with the majority decision.  I would follow this court's precedent in *Johnson, Fyffe, Brady, Jones,* and *Blankenship* and affirm the judgment of the court of appeals.  Accordingly, I dissent.

_____

Jeffries, Kube, Forrest & Monteleone Co., L.P.A., David A. Forrest, Jarret J. Northup, and Bradford D. Zelasko; and Dennis A. DiMartino, for appellee.

Tucker, Ellis & West, L.L.P., Irene C. Keyse-Walker, and Benjamin C. Sassé, for appellant.

Stewart Jaffy & Associates Co., L.P.A., Stewart R. Jaffy, and Marc J. Jaffy, urging affirmance for amicus curiae Ohio AFL-CIO.

Paul W. Flowers Co., L.P.A., and Paul W. Flowers, urging affirmance for amicus curiae Ohio Association for Justice.

Gallon, Takacs, Boissoneault & Schaffer Co., L.P.A., Theodore A. Bowman, and Russell Gerney, urging affirmance for amicus curiae UFCW Local 911 and AFSCME Local 2415.

Richard Cordray, Attorney General, Benjamin C. Mizer, Solicitor General, Elisabeth A. Long, Deputy Solicitor, and Todd A. Nist, Assistant Solicitor, urging reversal for amicus curiae Attorney General of Ohio.

Porter, Wright, Morris & Arthur, L.L.P., Carolyn A. Taggart, and J.H. Huebert, urging reversal for amicus curiae Ohio Association of Civil Trial Attorneys.

Garvin & Hickey, L.L.C., Preston J. Garvin, and Michael J. Hickey; Vorys, Sater, Seymour & Pease, L.L.P., and Robert A. Minor; and Bricker & Eckler, L.L.P., Anne Marie Sferra, and Thomas R. Sant, urging reversal for amici curiae Ohio Chamber of Commerce, Ohio Self-Insurers Association, Ohio Chapter of National Federation of Independent Business, and Ohio Manufacturers Association.

White, Getgey & Meyer Co., L.P.A., David P. Kamp, and Carl J. Stich Jr., supporting neither side for amicus curiae Amantea Nonwovens, L.L.C.

_____