[Cite as *Smith v. Esser & Sons, Inc.*, 2013-Ohio-1095.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

RYAN SMITH, et al.

    Appellants

    v.

RAY ESSER & SONS INC.

    Appellee

C.A. No.     12CA010150

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    09CV161264

DECISION AND JOURNAL ENTRY

Dated: March 25, 2013

---

CARR, Judge.

{¶1}	Appellant, Ryan Smith, appeals the judgment of the Lorain County Court of Common Pleas granting summary judgment in favor of appellee, Ray Esser & Sons, Inc. This Court reverses and remands.

I.

{¶2}	On June 30, 2008, Ryan Smith ("Ryan") began working for Esser & Sons, Inc. ("Esser"), a commercial plumbing contractor. Ryan was a seventeen-year-old high school student at that time, and he was working as an intern through a school sponsored program. Esser assigned Ryan to work on a leaking fire hydrant. Charles Clouser, another Esser employee, acted as foreman for the project, and Brian Rann, also a full-time Esser employee, acted as the third member of the crew.

{¶3}	On Ryan's first day on the job, the crew used an excavator to dig a trench that was approximately seven feet deep around the leaking hydrant. Over the course of the next two days,

rainwater filled the trench. On July 2, 2008, the crew returned to the project and pumped rainwater out of the trench before continuing its work. Clouser directed Rann to take the company truck and pick up parts for the project while Clouser and Ryan began working on the hydrant. Though the bottom of the trench remained muddy and the walls were wet, Clouser sent Ryan down into the trench to chip away at the brick thrust block with an electric chipping hammer. The thrust block had to be chipped away in order to access the area in the piping that required repair. Ryan found this task difficult given the muddy conditions.

{¶4} As Ryan was pulling out debris from the thrust block, the trench started to rapidly fill with water. Ryan attempted to stand up and get out of the trench, but he was unable to do so because his left hand was trapped. Ryan became submerged in the rising water. He was eventually able to escape the trench, although there is competing evidence as to whether he was able to free himself or whether Clouser pulled him out of the water. As a result of the incident, Ryan suffered significant injuries to his hand, including a torn tendon and six fractures to his middle finger.

{¶5} On March 19, 2009, Ryan commenced a workplace intentional tort action against Esser in the Lorain County Court of Common Pleas. Ryan's parents, Becky and Randy Smith, asserted a claim for loss of consortium. Thereafter Esser filed a motion for summary judgment. Although R.C. 2745.01 sets forth the standard to be applied in an employer intentional tort case, the statute was being challenged before the Supreme Court of Ohio at the time Esser filed its motion. Thus, Esser acknowledged that the statute was being challenged and instead argued that Esser was entitled to summary judgment under the common law standard for employer intentional torts.

{¶6} On March 22, 2010, Ryan submitted his brief in opposition to the motion for summary judgment. The next day, on March 23, 2010, the Supreme Court decided two cases upholding the constitutionality of R.C. 2745.01. *Stetter v. R.J. Corman Derailment Servs.*, *L.L.C.*, 125 Ohio St.3d 280, 2010-Ohio-1029; *Kaminski v. Metal & Wire Prods*. Co., 125 Ohio St.3d 250, 2010-Ohio-1027. On March 29, 2010, Esser filed a reply brief and asserted that it was entitled to summary judgment based on the standard set forth in *Kaminski, Stetter*, and R.C. 2745.01. On March 30, 2010, the trial court granted the motion. The court's analysis consisted of one sentence, followed by a citation to R.C. 2745.01 and *Kaminski*. On appeal, this Court reversed the judgment on the basis that the trial court granted summary judgment on grounds not specified in the motion for summary judgment. *Smith v. Ray Esser & Sons, Inc*., 9th Dist. No. 10CA009798, 2011-Ohio-1529.

{¶7} On remand, Esser filed a second motion for summary judgment on September 30, 2011. Ryan filed a memorandum in response to the motion, and Esser replied thereto. Ryan also filed a surreply with leave of court. The trial court heard oral arguments on the motion on December 14, 2011, and subsequently issued a journal entry granting the motion without analysis.

{¶8} On appeal, Smith raises one assignment of error.

II.

### ASSIGNMENT OF ERROR

[BECAUSE] GENUINE ISSUES OF MATERIAL FACT EXIST UPON PLAINTIFFS' WORKPLACE INTENTIONAL TORT THEORY OF LIABILITY, SUMMARY JUDGMENT WAS IMPROVIDENTLY GRANTED AS A MATTER OF LAW.

{¶9} In his assignment of error, Ryan contends that the trial court erred in granting summary judgment when there were genuine issues of material fact. This Court agrees.

{¶10} In support of his assignment of error, Ryan contends that Esser was aware of the hazardous working conditions in the trench, and that it deliberately ignored those conditions despite being substantially certain that they would lead to injuries. Ryan further contends that Esser deliberately ignored federal safety regulations, and disregarded known threats to Ryan's safety. Ryan concludes that because Esser was substantially certain that sending him into the trench would lead to injury, the trial court erred in granting summary judgment in favor of Esser.

{¶11} This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). This Court applies the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. *Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 12 (6th Dist.1983).

{¶12} Civ.R. 56 is an "extraordinary" procedure that "represents a shortcut through the normal litigation process." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990). Pursuant to Civ.R. 56(C), summary judgment is proper if:

> No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

{¶13} While the moving party bears the initial burden of showing that no genuine issue of material fact exists for trial, once the moving party satisfies its burden, the nonmoving party may not rest upon the mere allegations or denials of the party's pleadings. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996). Rather, the burden then shifts to the non-moving party to respond, with affidavits or as otherwise permitted by Civ.R. 56, setting forth specific facts which

show that there is a genuine issue of material fact for trial. *Id*. at 293. Civ.R. 56(C) designates the "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action," as proper in demonstrating that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Id*. at 292-293. Throughout, the evidence must be construed in favor of the non-moving party. *Temple,* 50 Ohio St.2d at 327. A disputed fact is material if it impacts the outcome of the case under the applicable substantive law. *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 304 (6th Dist.1999).

{¶14} In *Fyffe v. Jeno's, Inc.*, 59 Ohio St.3d 115 (1991), the Supreme Court of Ohio revisited its common-law employer intentional tort jurisprudence, and set forth the following standard:

> [I]n order to establish "intent" for the purpose of proving the existence of an intentional tort committed by an employer against his employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task.

*Fyffe* at paragraph one of the syllabus.

{¶15} In 2004, the Ohio General Assembly enacted R.C. 2745.01, an employer intentional-tort statute. In both *Kaminski v. Metal & Wire Prods*. Co., 125 Ohio St.3d 250, 2010-Ohio-1027, and *Stetter v. R.J. Corman Derailment Servs*., *L.L.C.*, 125 Ohio St.3d 280, 2010-Ohio-1029, the Supreme Court upheld the statute in the face of several constitutional challenges. "The net result of these two decisions is to confirm the constitutional validity of R.C. 2745.01." *Kaminski* at ¶ 2. In reaching this conclusion, the high court noted that while R.C. 2745.01 was

intended to modify the *Fyffe* standard by permitting recovery for employer intentional torts only when an employer acts with specific intent to cause an injury, it did not eliminate the common-law cause of action for an employer intentional tort. *Kaminski* at ¶ 56-57. In this case, Ryan maintains that in light of Esser's conduct, he is entitled to recovery under the standard set forth in R.C. 2745.01.

{¶16} R.C. 2745.01(A) states, "In an action brought against an employer by an employee * * * for damages resulting from an intentional tort committed by the employer during the course of employment, the employer shall not be liable unless the plaintiff proves that the employer committed the tortious act with the intent to injure another or with the belief that the injury was substantially certain to occur." For the purposes of this statute, the term "'substantially certain' means that an employer acts with deliberate intent to cause an employee to suffer an injury, a disease, a condition, or death." R.C. 2745.01(B). The statute further provides that the "[d]eliberate removal by an employer of an equipment safety guard or deliberate misrepresentation of a toxic or hazardous substance creates a rebuttable presumption that the removal or misrepresentation was committed with intent to injure another if an injury or an occupational disease or condition occurs as a direct result." R.C. 2745.01(C).

{¶17} In its motion for summary judgment, Esser argued that the accident in this case was not foreseeable, and that Ryan's claim was "the metaphysical conversion of an ordinary negligence case into one for employer intentional tort." Esser emphasized that there was no evidence that the separation of a mechanical compression joint ("MCJ") might cause injury. Esser continued that even if it was aware of the dangerous condition, there was no evidence that it knew the injury to Ryan was substantially certain to occur. Esser attached the affidavits of Randy Esser and Charles Clouser in support of its motion, as well as the diagram of the trench.

Ryan promptly responded to the motion, and attached the depositions of Randy Esser and Charles Clouser, his own affidavit, and numerous additional documents in support of his position that there was a question of material fact as to whether Esser was substantially certain that its actions would cause injury.

{¶18} In his affidavit, Ryan stated that he had no experience with excavations or trench work on the date he was sent into the trench. Ryan did everything he was told by his foreman, Charles Clouser, and he was eager to satisfy his employer because the job had been arranged through a program he was taking at the Lorain County Vocational School. The trench was at least seven feet deep and all of the walls were exposed. OSHA regulations require that trench walls are "sloped at an angle not steeper than one and one-half horizontal to one vertical," unless the employer uses another acceptable practice set forth in the code of federal regulations. 29 C.F.R. 1926.652(b)(1)(i) Here, Ryan averred that the walls in the trench were vertical, or nearly so, and this was particularly true with the wall that ran parallel to the fire hydrant piping. For nearly the entire length of the piping, the wall was either against or a few inches away from the piping.

{¶19} When Clouser ordered Ryan into the trench to chip away at the thrust block, Clouser remained almost continually above ground while Ryan was at the bottom of the trench. Ryan averred that "[a]ll of the sudden, water started rushing into the trench. The vertical pipe had shifted and pinned my hand against the exposed trench wall." Ryan further averred that had the trench wall been slopped at an angle, his hand would never have been pinned. Ryan stated, "The sloped wall would have been approximately a foot or more away from the pipe at the point where I was digging. My hand was crushed only because the wall ran parallel to the vertical piping and there [were] only a few inches in between. That would not have been the case if the

wall was sloped. I would have been able to pull my hand away before it was pinned." Ryan also averred that the trench did not have a safety box or shoring. Ryan stated that he would have been able to extricate his hand if he would have had something to grab onto with his free hand instead of the muddy trench walls. At the time of the incident, Ryan was unaware of any regulations pertaining to excavations or trench safety training for employees.

{¶20} In his deposition testimony, Randy Esser stated that his company has dug thousands of trenches since its inception in 1961. During his inspection of the hydrant in this case located at the Foxes Lair Apartments in Elyria, Esser was able to conclude that there was a leak. OSHA regulations require that when water accumulation is controlled by the use of water removal equipment, "the * * * operations shall be monitored by a competent person to ensure proper operation." 29 C.F.R. 1926.651(h)(2). Moreover, OSHA regulations require that "[d]aily inspections of excavations * * * shall be made by a competent person for evidence of a situation that could result in possible cave-ins * * *." 29 C.F.R. 1926.651(k)(1). Esser admitted that at the time of the incident, Clouser, who was designated as the foreman on the site, "did not meet the criteria to be a competent person * * * [b]ecause he had not been to the OSHA class or the training class." Esser further stated that "we did not realize what competent person meant at that time." Esser admitted that on the date of the incident, Clouser did not properly inspect the trench, verify the ratio requirements with regard to sloping, or ensure that there was a means of egress.

{¶21} OSHA regulations require that "[e]mployees shall not work in excavations in which there is accumulated water, or in excavations in which water is accumulating, unless adequate precautions have been taken to protect employees against the hazards posed by water accumulation. The precautions necessary to protect employees adequately vary with each

situation, but could include special support or shield systems to protect from cave-ins * * *." 29 C.F.R. 1926.651(h)(1). While Esser sometimes rents safety boxes and uses shore protections at a trench site, neither was done in this case. When asked if installing shoring and using a safety box would protect workers from injury, Esser responded, "Oh, absolutely, [] I agree with that a hundred percent." Esser further conceded that he normally hires a subcontractor for projects that require trenches deeper than four feet, and that those subcontractors use both safety boxes and shoring. Esser testified that on one prior project where his own son was sent into a trench, the company had rented a safety box. In regard to this project, however, Esser made a "deliberate decision" not to hire a subcontractor, or use a safety box or install shoring, because he considered this job a "simple repair." With respect to the trench in this case, Esser knew that the company was required to comply with OHSA regulations regarding the size of the trench, and he knew at the time of the incident that the trench in this case did not comply with those standards. Esser further admitted that he understood that failing to comply with the regulations increased the likelihood that an injury would occur. Moreover, Esser admitted that he knew Ryan was a 17-year-old intern who had "zero" days of experience on the date he was sent into the trench.

{¶22} Charles Clouser was also deposed in this matter. Clouser had several periods of employment with Esser since 1989, the latest of which began after he was released from prison in 2005. Clouser confirmed that Esser hired subcontractors for most projects that involved trenches deeper than four feet, and that he personally had used safety boxes and installed shoring. Clouser further stated that he would have taken either safety precaution in this case if Randy Esser had directed him to do so, but Esser gave no such direction. On the date of the incident, Ryan drove the crew to the job site because Clouser did not have his license. Clouser was aware that the trench did not comply with several federal safety regulations. Clouser

maintained that while Ryan was using the electric chipping hammer, Clouser was also in the trench getting the socket set laid. Clouser clarified that the muddy condition of the trench was due not only to the rain water, but also to the leaking hydrant. Clouser also noted that Ryan did everything he was asked at the job site, and that he did not do anything wrong.

{¶23} The affidavits attached to Esser's motion indicate that Ryan was submerged under water for approximately one minute before he reached the surface. After Ryan was transported to the hospital and water was pumped out of the trench, Esser discovered a buried MCJ located approximately one foot outside the trench. Esser further averred that he did not know of the existence of the MCJ prior to the accident and that "if [Ryan's] hand had not been in that location at the precise moment the buried MCJ separated, he would not have been injured[.]" Esser admitted in his affidavit that he was cited and fined by OSHA for failing to comply with regulations regarding the construction of trenches, and that he was fined by the U.S. Dept. of Labor for permitting Ryan to drive a company truck to the job site, but contended that the cause of the accident in this case had nothing to do with the OSHA or U.S. Dept. of Labor violations. In his own affidavit, Clouser stated that the water pressure in the system caused the MCJ to separate after the thrust block had been removed. Clouser averred that at the moment when Ryan bent down to pick up debris from the removal of the thrust block, the pressure caused the assembly to shift, and resulted in Ryan's hand becoming trapped. Both Esser and Clouser averred that they had not experienced a situation even remotely similar in their plumbing careers.

{¶24} Given the evidence presented by the parties, the trial court erred in granting summary judgment in favor of Esser. At the time of the incident, Randy Esser was aware that the OSHA regulations pertaining to excavations were specifically designed to ensure employee safety, and there is no dispute that he blatantly disregarded those safety regulations in this case.

The already muddy conditions in the trench were exaggerated by two days of rainfall. In the face of these dangerous conditions, Esser neither made an effort to ensure that the trench was properly sloped, nor did he put a competent person in place to inspect the dangerous conditions on the date of the incident. With full knowledge that certain safeguards could be put in place to ensure Ryan's safety, Esser and Clouser made a deliberate decision not to use a safety box or install shoring before sending Ryan into the trench. It is clear that Esser intentionally decided not to take necessary safety precautions with Ryan despite the fact that it had made a practice of putting such protections in place on prior projects, including one project involving Randy Esser's son. Ryan averred that his hand would not have been crushed if the wall had been sloped properly, and that he could have extricated himself sooner had a safety box or shoring been available. Despite the fact that Esser and Clouser were aware that Ryan was a seventeen-year-old intern who had zero days of experience working in a trench, Ryan was sent into the trench to work on the thrust block while Clouser, a full-time employee, mostly remained above ground. When construing these facts in the light most favorable to the non-moving party, reasonable minds could conclude that Esser was substantially certain that sending Ryan into the trench would result in injury. *Temple*, 50 Ohio St.2d at 327. Thus, it was improper to grant summary judgment in favor of Esser.

{¶25} Ryan's assignment of error is sustained.

### III.

{¶26} Ryan Smith's assignment of error is sustained. The judgment of the Lorain County Court of Common Pleas is reversed and the cause remanded for further proceedings consistent with this decision.

Judgment reversed,
and cause remanded.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

DONNA J. CARR
FOR THE COURT

MOORE, P. J.
BELFANCE, J.
CONCUR

APPEARANCES:

PAUL W. FLOWERS, Attorney at Law, for Appellants.

W. CRAIG BASHEIN, Attorney at Law, for Appellants.

KENNETH J. KNABE, Attorney at Law, for Appellants.

JOHN A. FIOCCA, JR. and MATTHEW C. WORKMAN, Attorneys at Law, for Appellee.